Filed 4/29/21

# CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHAEL D. BILLESBACH, | B296121 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC629369) |
| v. | |
| SPECIALIZED LOAN SERVICING LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of
Los Angeles County, Elizabeth Allen White, Judge.
Affirmed.

Lorden & Reed and Zshonette L. Reed for Plaintiff and
Appellant.

Reed Smith and Kasey J. Curtis for Defendant and
Respondent.

## INTRODUCTION

Appellant Michael D. Billesbach and his late wife obtained a home mortgage loan in 2006. Only appellant's wife signed the promissory note. Some time after appellant's wife died, appellant defaulted on the loan. According to appellant, the mortgage servicer, respondent Specialized Loan Servicing LLC, refused to communicate with him about the loan because he was not the named borrower. Respondent then initiated foreclosure proceedings by causing a notice of default to be recorded. The notice included a declaration that respondent had diligently tried to communicate with appellant about alternatives to foreclosure in accordance with Civil Code section 2923.55.[1] Respondent later scheduled a foreclosure sale of the property.

Appellant filed this action under the California Homeowner Bill of Rights (HBOR; § 2923.4 et seq.), seeking to enjoin the foreclosure proceedings. He claimed respondent had violated the HBOR by failing to assign him a "single point of contact" (§ 2923.7), failing to communicate with him regarding foreclosure alternatives before recording a notice of default (§ 2923.55), and recording a false declaration of compliance (§ 2924.17). Respondent postponed the foreclosure sale and agreed to review appellant's application for a loan modification. Ultimately, it offered appellant a trial-period modification plan and gave

---

[1] Undesignated statutory references are to the Civil Code.

2

him a deadline to accept the offer by making his first payment. Appellant did not make his initial payment by the deadline, however, opting instead to attempt to obtain more favorable terms, without seeking to postpone the foreclosure sale. In a conversation with appellant's counsel, an attorney for respondent suggested that appellant present terms acceptable to him. About three weeks later, minutes before the foreclosure sale was scheduled to take place, appellant's counsel submitted his offer to respondent. The foreclosure sale proceeded as planned, and the property was purchased by a third party. Appellant sought to enjoin the recording of the sale, but the trial court denied his application, and the sale was recorded.

Appellant then filed an amended complaint, adding an allegation that respondent had violated the HBOR by conducting the foreclosure sale while his loan-modification application was still pending (§ 2923.6), and seeking damages for respondent's alleged violations. Respondent moved for summary judgment, and the trial court granted the motion. The court concluded that appellant's claims under sections 2923.55 and 2923.6 failed because those provisions had been repealed after appellant filed his action. Alternatively, it concluded that respondent had remedied any material HBOR violation before the foreclosure sale, and that the sale resulted from appellant's failure to accept the offered trial-period modification plan. After learning that the Legislature had reenacted sections 2923.55 and 2923.6,

3

appellant moved for reconsideration, but the trial court denied his motion.

On appeal, appellant contends: (1) respondent failed to cure its pre-sale violations because it did not record a new notice of default after communicating with him; (2) respondent violated section 2923.6 by conducting the foreclosure sale while the parties were still in negotiations regarding a loan modification; and (3) given the Legislature's restoration of sections 2923.55 and 2923.6, the court erred in denying reconsideration. We reject each of appellant's contentions.

First, by its terms, the HBOR creates liability only for material violations that have not been remedied before the foreclosure sale is recorded. A material violation is one that affected the borrower's loan obligations, disrupted the borrower's loan-modification process, or otherwise harmed the borrower. Based on these principles, we hold that where a mortgage servicer's violations stem from its failure to communicate with the borrower before recording a notice of default, the servicer may cure these violations by doing what respondent did here: postponing the foreclosure sale, communicating with the borrower about potential foreclosure alternatives, and fully considering any application by the borrower for a loan modification. Following these corrective measures, any remaining violation relating to the recording of the notice of default is immaterial, and a new notice of default is therefore not required to avoid liability. We do not endorse respondent's

4

conduct in failing to communicate with appellant before initiating foreclosure proceedings and failing to comply with other statutory requirements.  Mortgage servicers should take care to comply with their statutory obligations in the first instance, rather than seek to cure violations after a borrower has sued them.  We conclude only that appellant has provided no basis for liability under the HBOR.

As for the claimed section 2923.6 violation, the statute prohibits mortgage servicers from proceeding with the foreclosure process while a borrower's application for a loan modification is pending.  On the record before us, we conclude respondent complied with this requirement as a matter of law by conducting the foreclosure sale only after appellant failed to accept an offered trial-period modification plan.  Neither the continued communications between the parties following the expiration of the offer, nor appellant's last-minute offer on the eve of the sale, revived the expired offer or rendered appellant's application "pending" for purposes of the statute.

Finally, given our conclusions and the trial court's consideration of the merits of appellant's claims, the reinstatement of sections 2923.55 and 2923.6 did not warrant reconsideration.  We therefore affirm.

5

# BACKGROUND

*A. The Loan and Respondent's Initiation of Foreclosure Proceedings*

In 2006, appellant and his wife, Darlina E. Billesbach, took out a home equity line of credit secured by the couple's home in Lancaster.  Only Mrs. Billesbach signed the promissory note, but both she and appellant executed the deed of trust securing it.  After Mrs. Billesbach's death in 2008, appellant continued to make monthly payments on the loan.  Respondent began servicing the loan in 2011.

According to respondent, appellant defaulted on the loan in early 2015.  In February 2016, appellant made a monthly payment, but respondent returned the payment and advised him that the loan was in arrears and it could not accept anything less than the full amount due.  According to appellant, he contacted respondent to inquire about the status of the loan and work out a payment arrangement, but despite informing respondent that his wife had died, was told he could not receive any information because he was not the named borrower.

About two months later, in April 2016, respondent initiated non-judicial foreclosure proceedings by causing a notice of default to be recorded.[2]  Included with the notice of

---

[2]     "[S]ections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 (*Moeller*).)  "The (*Fn. is continued on the next page.*)

default was a declaration of compliance with section 2923.55, stating that respondent had "exercised due diligence to contact the borrower . . . to 'assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.'"[3]  The declaration identified appellant and his wife as the borrowers.  Appellant's daughter attempted to contact respondent on his behalf, but respondent would not speak with her.  In July 2016, respondent caused a notice of sale to be recorded, setting a foreclosure sale of the property for the following month.

### B. Appellant's Lawsuit and Subsequent Application for a Loan Modification

In August 2016, days before the scheduled foreclosure sale, appellant filed a complaint against respondent, asserting violations of the HBOR and seeking injunctive relief.  On appellant's application, the trial court issued a

---

foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee.  (Civ. Code, § 2924; [citation].)  After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale.  (Civ. Code, § 2924, subd. (b); [citation].)  After the 3-month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale.  (Civ. Code, § 2924f; [citation].)" (*Moeller, supra,* at 830.)

[3]   As discussed more fully below, section 2923.55 requires mortgage servicers to contact the borrower in person or by phone, or diligently attempt to do so, before recording a notice of default. (§ 2923.55, subds. (a), (b)(2) & (f).)

7

temporary restraining order to enjoin the foreclosure sale and ordered respondent to show cause why it should not issue a preliminary injunction.

Around the same time, appellant's counsel sent respondent a written request to review appellant for a loan modification. In response, respondent assigned a service representative to serve as appellant's "single point of contact," and advised the court that it was willing to review appellant for a loan modification.[4] In September 2016, appellant submitted a loan-modification application to respondent, and over the next month, provided additional documents at respondent's request, until his application was complete. Because his application was under review, appellant took the scheduled hearing on his request for a preliminary injunction off calendar.

In November 2016, respondent denied appellant's application for a loan modification, but informed him he could apply for a second, independent review to determine his eligibility. Appellant took advantage of this option and appealed respondent's initial denial of his application.

---

[4] A single point of contact is an individual or team of personnel responsible for, inter alia, instructing the borrower on the procedures for seeking foreclosure-prevention alternatives, coordinating receipt of necessary documents from the borrower, and informing the borrower of the status of any foreclosure-prevention alternative. (§ 2923.7, subds. (b) & (e).)

*C. Respondent's Offer of a Trial-Period Modification Plan*

On December 19, 2016, following its review of appellant's appeal, respondent sent appellant a letter (erroneously addressed to Mrs. Billesbach's estate), offering him a "Trial Period Modification Plan." This plan required appellant to make three timely monthly payments of about $1,000, an estimate of the payment respondent would require under the modified loan terms when finalized. Under the trial-period modification plan, respondent would not conduct a foreclosure sale as long as appellant continued to make timely trial-period payments. If appellant made all timely payments and met certain other conditions, respondent would offer him a permanent modification agreement. As part of any permanent modification agreement, respondent would waive all unpaid late charges.

Respondent advised appellant that to accept the trial-period modification plan, he was required to make his initial payment by January 25, 2017: "To accept this offer, you must make new monthly trial period payments. To qualify for a permanent modification, you must make the trial period payments in a timely manner and the loan must maintain an insurable lien position post recording of the modification. [¶] . . . [¶] The initial payment must be received in our office no later than January 25, 2017. Your failure to [make a payment] by January 25, 2017 will result in [respondent] rescinding our Trial Period Modification Plan offer. [¶] . . . [¶] **We must receive each payment, in**

**the month in which it is due. If you miss a payment or do not fulfill any other terms of your trial period, this offer will end and your mortgage loan will not be modified.**" On December 23, 2016, four days after sending this offer to appellant, respondent notified him that it was postponing the foreclosure sale to February 27, 2017, at 11:00 am.

### D. Subsequent Communications Between the Parties and the Foreclosure Sale

On January 9, 2017, appellant's counsel contacted appellant's assigned single point of contact, sought information about the loan balance, expressed that the amount of the offered trial-period payments was too high, and advocated for a lower payment amount.[5] Counsel did not seek an extension of the deadline for acceptance of respondent's offer. The representative informed counsel that a loan modification was a means to bring a loan out of default and did not guarantee a lower payment. She then told counsel she needed to look into the matter in order to provide additional information. After counsel did not hear back from the representative, counsel attempted to contact

---

[5]     Respondent's representative initially told appellant's counsel she would have to speak with respondent's attorney because appellant's case was in litigation. However, after appellant's counsel informed the representative that the attorney had directed her to contact respondent directly, the representative agreed to speak with her.

both respondent and its attorney in the litigation below, Tanya McCullah, without success. By the end of January 25, 2017, appellant had not made the initial payment under the offered trial-period modification plan. Thus, by its terms, respondent's offer was rescinded.

On February 7, 2017, after the deadline to accept respondent's offer had passed, appellant's counsel spoke with McCullah and expressed appellant's desire for more favorable terms. McCullah suggested that appellant's counsel "detail the terms of a loan modification that [appellant] would accept[,] and she would forward it to her client." Appellant's counsel did not seek and McCullah did not agree to postpone the foreclosure sale.

On February 27, at 10:54 am, minutes before the scheduled foreclosure sale, appellant's counsel sent McCullah a "CONFIDENTIAL SETTLEMENT COMMUNICATION," laying out repayment terms that would be acceptable to appellant. Respondent proceeded with the foreclosure sale as planned, and the property was sold to a third party. Appellant filed an ex parte application, asking the court to void the foreclosure sale and enjoin respondent from recording it. However, the trial court denied appellant's application, and the trustee's deed following the foreclosure sale was later recorded.

*E. Appellant's Operative Complaint and Respondent's Motion for Summary Judgment*

Appellant filed an amended complaint in October 2017, alleging violations of the HBOR and seeking damages. Appellant claimed respondent had failed to assign him a single point of contact in a timely manner as required by section 2923.7, failed to contact him by phone or in person before recording a notice of default as required by section 2923.55, recorded a false declaration in violation of section 2924.17, and conducted the foreclosure sale while his loan-modification application was still pending in violation of section 2923.6.

In June 2018, following discovery, respondent moved for summary judgment, contending it had cured any material pre-sale violations by postponing the foreclosure sale, assigning appellant a single point of contact, communicating with him about foreclosure alternatives, reviewing his application for a loan modification, and offering him a trial-period modification plan. It claimed it could not be liable for any cured violations under the HBOR. Respondent further contended that it was free to proceed with the sale after appellant failed to accept the offer by the deadline. Additionally, respondent observed that on January 1, 2018, sections 2923.55 and 2923.6 were repealed pursuant to sunset provisions, and thus argued that appellant could not maintain claims relating to violations of these provisions.

12

Opposing the motion, appellant argued that respondent had not cured its violations because it did not file a new notice of default after communicating with him, and that his loan-modification application remained pending at the time of the foreclosure sale. He claimed the substantive protections of sections 2923.55 and 2923.6 continued to be enforceable, despite their repeal.

In November 2018, the trial court granted summary judgment for respondent. On appellant's motion for clarification, the court later issued a revised ruling, which included additional discussion but did not change the disposition. The court concluded that appellant could not recover for violations of sections 2923.55 and 2923.6 because they were no longer effective. The court nevertheless proceeded to consider the merits of appellant's claims. It concluded that respondent had remedied any material pre-sale violations by postponing the foreclosure sale, assigning appellant a single point of contact, and considering appellant's application for a loan modification. It further concluded that the foreclosure sale resulted from appellant's failure to accept respondent's offer.

*F. Appellant's Motion for Reconsideration*

In December 2018, after learning that the Legislature had reenacted section 2923.55 and 2923.6 in September and that they were set to take effect on January 1, 2019, appellant moved for reconsideration. He argued this

13

legislation constituted new law that required the trial court to reevaluate its ruling.

The trial court denied appellant's motion for reconsideration, concluding, inter alia, that the new legislation would not have affected its ruling. The court entered judgment for respondent, and appellant timely appealed.

## DISCUSSION

### A. *The Grant of Summary Judgment*

Appellant claims respondent materially violated his rights under the HBOR by: (1) recording a notice of default without attempting to contact him (§ 2923.55); (2) failing to establish a single point of contact in a timely manner (§ 2923.7); (3) including a false declaration of compliance in the notice of default (§ 2924.17); and (4) conducting a foreclosure sale while his application for a loan modification was still pending (§ 2923.6). As explained below, we conclude respondent sufficiently cured its pre-sale violations under sections 2923.55, 2923.7, and 2924.17, and did not violate the dual-tracking prohibition of section 2923.6.

#### 1. *General Principles*

"Summary judgment is appropriate only where 'no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th

607, 618, 230 Cal.Rptr.3d 415, 413 P.3d 656.) "'"We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.'"" (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Ibid.*)

In interpreting a statute, "'[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.'" (*Jarman v. HCR ManorCare, Inc.* (2020) 10 Cal.5th 375, 381.) "'We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.'" (*Ibid.*)

Here, we interpret the HBOR. The Legislature enacted the HBOR in 2012, while California was "still reeling from the economic impacts of a wave of residential property foreclosures that began in 2007." (Stats. 2012, ch. 87, § 1, subd. (a).) This legislation sought to "modify[] the

15

foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options." (*Id.*, § 1, subd. (b).) Many sections of the HBOR were subject to sunset provisions, causing them to be automatically repealed on January 1, 2018. Affected portions of the legislation included sections 2923.55, 2923.6, and 2924.12. (Former §§ 2923.55, subd. (i), 2923.6, subd. (k), 2924.12, subd. (k).) However, effective January 1, 2019, the Legislature reenacted these provisions and expressed its intent that their prior repeal would not release liability previously incurred. (Stats. 2018, ch. 404, §§ 6-7, 26.)[6]

### 2. *Respondent Sufficiently Cured Its Pre-Sale Violations Under Sections 2923.55, 2923.7, and 2924.17*

Respondent does not dispute, for purposes of this appeal, that it failed to follow the HBOR's pre-sale procedures under sections 2923.55, 2923.7, and 2924.17 before appellant filed this action. It contends, however, that it cured any pre-sale violation by postponing the sale and allowing appellant to pursue foreclosure alternatives. We agree that respondent cured the material aspects of its pre-

---

[6]     We deny appellant's request for judicial notice of this legislation, as "[w]e take notice of the public statutory law of this state without a request . . . ." (*County of Los Angeles v. Hill* (2011) 192 Cal.App.4th 861, 866, fn. 3.)

16

sale violations as a matter of law and is thus not subject to liability for them. Following respondent's curative measures, any uncured violation relating to the premature recording of the notice of default caused appellant no meaningful harm and is therefore not actionable.

### a. *Principles*

Among other things, the HBOR requires mortgage servicers to contact (or diligently attempt to contact) the borrower in person or by phone before recording a notice of default, in order to assess the borrower's financial situation and explore options to prevent foreclosure. (§ 2923.55, subds. (a), (b)(2) & (f).)[7] When a servicer records a notice of

---

[7] Section 2923.55 generally applies only to larger mortgage servicers. (See § 2923.55, subd. (g) ["This section shall not apply to entities described in subdivision (b) of Section 2924.18"]; § 2924.18, subd. (b) [describing certain entities who foreclosed on 175 or fewer residential properties in preceding year].) Section 2923.5, which is substantively similar to section 2923.55, applies to smaller servicers. (See § 2923.5, subd. (g) ["This section shall apply only to entities described in subdivision (b) of Section 2924.18"].)

Before the HBOR's enactment in 2012, section 2923.5 covered both large and small lenders but was limited to loans made between 2003 and 2007. (Former § 2923.5, subd. (i).) The former version of section 2923.5 included no express private right of action, but in *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 214 (*Mabry*), the court held one was implied in the statute. Section 2924.19 now provides an express private right of action for material violations of section 2923.5. (§ 2924.19, subds. (a) & (b).)

default, the notice must generally include a declaration that the servicer has contacted the borrower or has tried to do so with due diligence. (*Id.* at subd. (c).) The required declaration must "be accurate and complete." (§ 2924.17, subd. (a).) If a borrower requests a foreclosure-prevention alternative, the servicer must promptly establish a single point of contact and provide the borrower a direct means of communication with that point of contact. (§ 2923.7, subd. (a).) The HBOR also prohibits mortgage servicers from proceeding to the next step in the foreclosure process while a borrower's complete application for a loan modification is pending (§ 2923.6, subds. (c) & (e)), a practice commonly known as "'dual tracking'" (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 904 (*Jolley*)).

When a mortgage servicer commits a "material violation" of these provisions, the HBOR allows the borrower to sue for injunctive relief before a foreclosure sale is recorded and for monetary damages after the sale has been recorded.[8] (§ 2924.12, subds. (a) & (b).) Neither the HBOR nor California caselaw expressly defines the term "material" for purposes of section 2924.12. However, federal district courts applying California law have held that a violation is material if it affected the borrower's loan obligations, disrupted the loan-modification process, or otherwise harmed the borrower in connection with the borrower's

---

8    Under section 2924.12, subdivision (e), a violation of the HBOR's provisions does not "affect the validity of a sale in favor of a bona fide purchaser . . . for value without notice."

18

efforts to avoid foreclosure.  (See, e.g., *Cardenas v. Caliber Home Loans, Inc.* (N.D.Cal. 2017) 281 F.Supp.3d 862, 870 (*Cardenas*) [no material violation where plaintiff alleged no facts suggesting that statutory breaches "'affected [her] loan obligations,' disrupted [her] loan modification process, or caused [her] to suffer harm that [she] would not have suffered otherwise"]; *Galvez v. Wells Fargo Bank, N.A.* (N.D.Cal. Oct. 4, 2018, No. 17-cv-06003-JSC) 2018 U.S.Dist. LEXIS 172087, at \*12 (*Galvez*) [applying *Cardenas*'s standard].)  In other words, the HBOR creates no liability for a technical violation that does not thwart its purposes. California caselaw involving the materiality requirement is consistent with this rule.  (Compare *Schmidt v. Citibank, N.A.* (2018) 28 Cal.App.5th 1109, 1124, fn. 7 (*Schmidt*) [if borrower had opportunity to discuss financial situation and foreclosure alternatives with lender, purpose of statute is met, and any violation by lender in failing to *initiate* contact was not material] with *Berman v. HSBC Bank USA, N.A.* (2017) 11 Cal.App.5th 465, 472 [lender materially violated HBOR by sending borrower letter affording him shorter time than required by statute to appeal initial denial of loan modification, which "effectively diminished" borrower's right to appeal].)

Section 2924.12, subdivision (c) encourages mortgage servicers to cure any material violation by providing a safe harbor:  "A mortgage servicer . . . shall not be liable for any violation that it has corrected and remedied prior to the recordation of the [foreclosure sale] . . . ."  (*Ibid.*)  Thus, in

19

the context of damages liability, the material effect of a violation must be measured after the foreclosure sale is recorded.  By the statute's terms, a temporary disruption of the normal foreclosure process that is corrected and causes no lasting harm to the borrower's rights will give rise to no liability.

### b.  *Analysis*

After appellant filed his lawsuit, respondent postponed the foreclosure sale, provided appellant with a single point of contact, communicated with him about foreclosure alternatives, reviewed his loan-modification application, and ultimately offered him a trial-period modification plan.[9] These curative measures satisfied the HBOR's purpose to ensure that borrowers have a meaningful opportunity to obtain loss-mitigation options.  (See *Schmidt, supra,* 28 Cal.App.5th at 1124, fn. 7.)  It is true that respondent remained in technical non-compliance with the HBOR:  it communicated with appellant only after it recorded its notice of default, and its declaration of compliance was inaccurate

---

[9]     For the first time at oral argument, appellant's counsel suggested that the single point of contact's lack of responsiveness during and after their January 9, 2017, conversation constituted a violation of section 2923.7.  By failing to present and develop this argument in his briefs, appellant has forfeited any contention in this regard.  (See *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9 ["We do not consider arguments that are raised for the first time at oral argument"].)

at the time it was recorded.  Yet appellant offered no evidence that these pre-sale violations affected his loan obligations, disrupted his loan-modification process, or otherwise harmed him, despite appellant's subsequent remedial actions.  Absent any meaningful harm to appellant, respondent's uncured violations were not material.  (See *Schmidt, supra*, at 1124, fn. 7; *Cardenas, supra*, 281 F.Supp.3d at 870; *Galvez, supra*, 2018 U.S.Dist. LEXIS 172087, at \*12.)

Appellant argues respondent's uncured violations were material because, as a matter of law, they rendered the notice of default, and thus the ensuing foreclosure sale, invalid.  He claims that to cure its pre-sale violations, respondent was required to file a new notice of default after affording him the opportunity to apply for a loan modification.  We disagree.

In the context of a notice of sale, federal district courts have held that when an otherwise valid notice is recorded in violation of the HBOR's requirements, the notice is not void, and the violation may be cured without recording a new notice.  (See, e.g., *Gilmore v. Wells Fargo Bank N.A.* (N.D.Cal. 2014) 75 F. Supp.3d 1255, 1265-1266 [notice of sale recorded in violation of dual-tracking prohibition is not void; "[o]nce the violation is remedied [by acting on the pending loan-modification application], Wells Fargo would be free to proceed with the foreclosure" (*id.* at 1266)]; *Jerviss v. Select Portfolio Servicing, Inc.* (E.D. Cal. Nov. 25, 2015, No. 2:15-CV-01904-MCE-KJN) 2015 U.S.Dist. LEXIS

21

159630, at \*14-16 [defendants not liable for recording notice of sale in violation of dual-tracking prohibition because they remedied violation by postponing sale, considering borrower's application, and denying it in writing]; *Hestrin v. CitiMortgage, Inc.* (C.D.Cal. Apr. 7, 2016, No. CV 16-1974-GW(GJSx)) 2016 U.S.Dist. LEXIS 189495, at \*12 [no material violation where "'even if there was a brief period of dual tracking [following recording of notice of sale], [servicer] corrected and remedied it by fully evaluating [borrower's] second loan modification application'"].)  We see no reason a different rule should apply to a notice of default.  Requiring a servicer to record a new, identical notice of default following full consideration of the borrower's loan-modification application would do nothing to further the HBOR's purpose.

In support of his position that a servicer must record a new notice of default to cure prior violations, appellant cites *Mabry, supra*, 185 Cal.App.4th 208.  There, the Court of Appeal held that non-compliance with the pre-HBOR version of section 2923.5 rendered a notice of default invalid.[10] (*Mabry, supra*, at 223.)  The court then remanded the matter and instructed the trial court, if it determined the servicer had violated section 2923.5, to postpone the foreclosure sale until the servicer complied with the statute and filed a new notice of default.  (*Mabry*, at 237.)  *Mabry* is inapposite.

---

[10]    As noted, former section 2923.5's substantive provisions were largely similar to those of current section 2923.55.

22

Initially, beyond its mere instruction to the trial court, the *Mabry* court did not meaningfully discuss whether subsequent compliance with the statute could cure prior violations without a new notice of default. Indeed, the servicer had not attempted to cure the alleged violations (*id.* at 215-217), and it does not appear from the court's opinion that the parties even raised the issue. Moreover, *Mabry* did not assess the required remedial measures through the lens of section 2924.12's materiality requirement. Former section 2923.5 included no express private right of action. In concluding that a private right of action was nevertheless implied in the statute, the court relied in part on section 2924g, subdivision (c)(1)(A), which set forth grounds for postponement of a foreclosure sale, including the "open-ended possibility that any court of competent jurisdiction may issue an order postponing the sale." (*Mabry*, at 223.) Neither former section 2923.5 nor section 2924g included a materiality requirement, and the court never addressed such a requirement. Accordingly, *Mabry* is not instructive on the issues in this case.

In his reply brief, appellant notes that about 10 months passed between the April 2016 recording of the notice of default and the February 2017 foreclosure sale. He suggests that had respondent filed a new notice of default after complying with section 2923.55's pre-notice requirements (as early as September 2016, according to the parties), it is possible that the sale would not have taken place for another 10 months after the new notice, making the sale of his home

23

"premature." In assessing the materiality of respondent's violations, however, the question is whether the violations harmed appellant, not whether a particular remedy he seeks might have provided a greater benefit to which he was not entitled under the statute. Indeed, appellant does not dispute respondent's contention that under the HBOR, recording a new notice of default would not have required delaying the February 2017 foreclosure sale. Moreover, respondent's violations, the resulting litigation, and respondent's consideration of appellant's application and appeal were responsible for much of the gap between the notice of default and the foreclosure sale. The record offers no reason to assume a new notice of default would have delayed the sale further. In short, respondent cured its material pre-sale violations as a matter of law and is thus not liable for them under section 2924.12.[11] Any remaining technical violation of the HBOR's pre-sale requirements is not actionable.

---

[11] Appellant points to various statements in the trial court's ruling he asserts are erroneous. We review the correctness of the trial court's decision, not the correctness of every statement in its written ruling. (See *Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 610 ["an appellate court reviews the action of the lower court and not the reasons given" and "there can be no prejudicial error from erroneous logic or reasoning if the decision itself is correct"].) Given our conclusions, on de novo review, that appellant's claims fail as a matter of law, the relevant statements by the trial court could not warrant reversal, even assuming arguendo that they were erroneous.

24

### 3. *Respondent Did Not Violate Section 2923.6's Dual-Tracking Prohibition*

Appellant argues respondent violated section 2923.6's dual-tracking prohibition, claiming his application for a loan modification was still pending at the time of the foreclosure sale because the parties were still in negotiations for a loan modification. Again, we disagree.

### a. *Principles*

Under the practice of dual tracking, financial institutions continue to pursue foreclosure while evaluating a borrower's loan modification application. "The result is that the borrower does not know where he or she stands, and by the time foreclosure becomes the lender's clear choice, it is too late for the borrower to find options to avoid it." (*Jolley*, *supra*, 213 Cal.App.4th at 904.) Section 2923.6 bars this practice and regulates servicers' consideration of loan-modification applications.

Section 2923.6, subdivision (c) provides that if a borrower submits a timely application for a loan modification, the servicer may not take certain steps, including conducting a foreclosure sale, while the application is "pending." (*Ibid.*) Further defining this proscription, the provision states that a servicer may not conduct a foreclosure sale until: (1) the servicer denies a loan modification in writing, and any appeal period has expired; (2) the borrower does not accept an offered loan modification within 14 days of the offer; or (3) the borrower accepts a

25

loan-modification offer but later breaches his or her obligations under the offer.  (§ 2923.6, subd. (c).)

Under subdivision (d) of section 2923.6, if a servicer denies a borrower's application for a loan modification, it must afford the borrower at least 30 days to appeal the servicer's initial denial.  (*Ibid.*)  As relevant here, if the borrower appeals, subdivision (e) instructs that the servicer may not conduct a foreclosure sale until "the later of 15 days after the denial of the appeal or 14 days after a . . . loan modification is offered after appeal but declined by the borrower, or, if a . . . loan modification is offered and accepted after appeal, the date on which the borrower fails to timely submit the first payment or otherwise breaches the terms of the offer."  (§ 2923.6, subd. (e)(2).)  To minimize the risk for abuse of these procedures by a borrower, subdivision (g) of section 2923.6 provides that after a servicer has evaluated a borrower's application in accordance with the statute's requirements, it is not obligated to evaluate a successive application, unless there has been a material change in the borrower's financial circumstances.

b.   *Analysis*

The record establishes as a matter of law that appellant's application for a loan modification was no longer pending at the time of the foreclosure sale.  Under the statute, a servicer may conduct a foreclosure sale when "the borrower does not accept an offered . . . loan modification within 14 days of the offer" (§ 2923.6, subd. (c)(2)) or "14

26

days after a . . . loan modification is offered after appeal but declined by the borrower" (*id.,* at subd. (e)(2)). After appellant appealed respondent's initial denial of his application, respondent offered him a trial-period modification plan, giving him until January 25, 2017, to accept the offer by making his first payment. Respondent advised appellant in no uncertain terms that if it did not receive payment by that date, the offer would "end," he would not qualify for a permanent modification, and his loan would not be modified. Appellant's counsel contacted respondent and advocated for more favorable terms, but neither requested nor received an extension of the deadline. By the end of January 25, appellant had not submitted his first payment. He therefore failed to accept respondent's offer, and the offer expired on that day, according to its terms. Respondent thus provided appellant a clear answer regarding his application, regardless of his continued hope that respondent would change its mind and offer him different terms. Appellant's rejection by default of respondent's offer constituted the final step in the statutory process under section 2923.6, subdivisions (c) and (e).

In arguing that his application remained pending, appellant relies on his counsel's February 7, 2017, conversation with Tanya McCullah, respondent's attorney in the litigation below. In that conversation, McCullah suggested that appellant's counsel "detail the terms of a loan modification that [appellant] would accept[,] and she would forward it to her client." Despite appellant's knowledge that

27

the foreclosure sale was scheduled to take place on February 27, his counsel did not seek to postpone the impending sale (and McCullah did not agree to do so); nor did counsel submit an offer to McCullah until minutes before the scheduled foreclosure sale, some three weeks after their conversation.  Based on his counsel's interaction with McCullah, appellant argues there is "a question of fact as to whether the request for a counter offer constitutes continued negotiation."

However, whether communications between the parties constituted "continued negotiation" is not the standard under section 2923.6.  Appellant offers no authority for this standard, and we are aware of none.  As outlined above, the statute provides a clear framework to determine whether an application is pending.  Nothing in the statute suggests that continued interactions between a servicer and borrower following the expiration of a loan-modification offer -- much less the borrower's extension of a new offer thereafter -- can revive the original offer or extend the pendency of the borrower's application.[12]

Nor would such an approach accord with the statute's purpose.  Making a servicer's ability to proceed with the foreclosure process turn on whether continued

_____

[12]     Appellant relies solely on the statutory framework of section 2923.6 and does not contend that his reliance on representations by respondent gave rise to equitable estoppel. We therefore do not consider the application of that doctrine to the facts of this case.

28

communications fall under the nebulous concept of negotiations would create uncertainty and hinder the borrower's ability to "know where he or she stands." (*Jolley*, *supra*, 213 Cal.App.4th at 904.) This rule would also incentivize servicers to cut off any non-required communications with borrowers following the denial of an application or rejection of an offer, thereby reducing borrowers' chances of obtaining foreclosure alternatives.

Appellant alternatively claims that respondent made him no offer for a loan modification because (1) a trial-period modification plan "is just the first step toward a loan modification," and (2) the offer was addressed to his late wife's estate. Appellant offers no reason why an offer for a trial-period modification plan would not constitute a loan-modification offer for purposes of section 2923.6, and we see no reason it would not. Nothing in the language of the statute excludes a trial-period modification plan. And as explained, respondent's offer accomplished the purpose of the statute by informing appellant of respondent's intention to proceed with foreclosure proceedings absent his acceptance and compliance with the terms of the offer. While the trial-period modification plan was not itself a permanent modification plan, it was the only path to permanent modification respondent offered appellant -- a path he failed to take.

As for the offer being misaddressed, appellant does not dispute that he understood the offer was directed to him, and his counsel's attempts to negotiate its terms on his

29

behalf underscore his understanding. Thus, appellant cannot establish that this mistake constituted a material violation for purposes of section 2924.12. Accordingly, we conclude respondent did not violate section 2923.6's dual-tracking prohibition.

## B. *The Denial of Reconsideration*

Appellant challenges the trial court's denial of his motion for reconsideration based on new law, contending that the reenactment of sections 2923.55 and 2923.6 warranted a different result. The trial court, however, had already considered the potential application of those provisions, and concluded appellant could not demonstrate respondent had materially violated them. As discussed above, we agree that appellant cannot establish actionable violations of these provisions. Accordingly, appellant's motion offered no new law warranting reconsideration.[13] (See *Gilberd v. AC Transit* (1995) 32 Cal.App.4th 1494, 1500

---

[13] Appellant additionally seeks to challenge the denial of his ex parte application to enjoin the recording of the foreclosure sale. But given that the foreclosure sale was recorded in March 2017, this challenge is moot. (See *City of Cerritos v. State of California* (2015) 239 Cal.App.4th 1020, 1031 ["An appeal from an order denying an injunction may be dismissed as moot if the act sought to be enjoined is performed while the appeal is pending"]; *County of Los Angeles v. Butcher* (1957) 155 Cal.App.2d 744, 746 ["Whether an injunction restraining the sale of real property should be granted becomes a moot question on appeal where in the meantime the property has been sold"].)

[reconsideration not warranted where movant presented no authorities "that were not considered by the trial court when it issued its initial orders"]; *Robbins v. Los Angeles Unified School Dist.* (1992) 3 Cal.App.4th 313, 318 [party challenging denial of reconsideration must establish injury from claimed error].)

## DISPOSITION

The judgment is affirmed.  Each party shall bear its own costs on appeal.

**CERTIFIED FOR PUBLICATION**

MANELLA, P. J.

We concur:

COLLINS, J.

CURREY, J.