Filed 11/7/18

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DAVID SCHMIDT et al., <br><br>    Plaintiffs and Appellants, <br><br> v. <br><br> CITIBANK, N.A., et al., <br><br>    Defendants and Respondents. | D072993 <br><br><br><br> (Super. Ct. No. 37-2015-00024415-CU-OR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge. Affirmed.

Stephen F. Lopez for Plaintiffs and Appellants.

Wright, Finlay & Zak, Gwen H. Ribar, Jonathan D. Fink and Ruby J. Chavez for Defendants and Respondents.

I.

INTRODUCTION

Plaintiffs David and Hedda Schmidt appeal from a judgment entered in favor of defendants Citibank, N.A., as Trustee for Structured Asset Mortgage Investments II Trust

2007-AR3 Mortgage Pass Through Certificates Series 2007-AR3, and Select Portfolio Servicing, Inc. (defendants).

The Schmidts filed this action against the defendants, alleging violations of the Homeowners' Bill of Rights (HBOR; Civ. Code, §§ 2923.55, 2923.6) and Business and Professions Code section 17200, and seeking to prevent the completion of a trustee's sale of their residence.

The defendants moved for summary judgment and presented evidence of extensive and numerous telephone calls between the Schmidts and Select Portfolio Servicing, Inc., the loan servicer, during which the Schmidts' financial situation was discussed, as were possible options to avoid foreclosure. The trial court granted the defendants' motion for summary judgment and entered judgment in their favor.

On appeal, the Schmidts contend that summary judgment should not have been granted because there remain triable issues of fact to be determined. We disagree and affirm the judgment.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

In January 2007, the Schmidts obtained a $1,820,000 loan, secured by a residence at 2415 Rue Denise in La Jolla, California (the Property). The Schmidts signed a promissory note and deed of trust securing the note. The deed of trust was assigned to

Citibank, N.A., as Trustee for Structured Asset Mortgage Investments II Trust 2007-AR3 Mortgage Pass Through Certificates Series 2007-AR3.[1]

The Schmidts defaulted on the loan and entered into a loan modification agreement in February 2013 with their loan servicer at the time, JPMorgan Chase Bank. Within approximately seven months, the Schmidts defaulted on the loan modification agreement.

In March 2014, Select Portfolio Services, Inc. (SPS) began servicing the Schmidts' loan.

On March 10, 2014, SPS sent the Schmidts a letter with an enclosed document regarding the Servicemembers Civil Relief Act (SCRA), including information regarding SCRA eligibility and protections. Between March 18 and November 22, 2014, SPS employees spoke on the telephone with the Schmidts on numerous occasions about the status of their mortgage. The evidence presented to the trial court on summary judgment demonstrated that the Schmidts and SPS employees discussed a variety of matters, including the Schmidts' financial situation and potential options for avoiding foreclosure. SPS employees also provided the Schmidts with a toll free number for the Department of Housing and Urban Development (HUD), as required by the HBOR, on at least three occasions.

---

[1] Wilmington Trust, N.A. succeeded Citibank, N.A. as trustee of the securitized trust.

In the meantime, in March 2014, the Schmidts submitted a completed loan modification application to SPS. In July 2014, SPS denied the March 2014 loan modification application. The record demonstrates that the Schmidts did not appeal the denial of the loan modification.

On November 26, 2014, SPS sent the Schmidts a letter indicating that the Schmidts could request certain documents, including a copy of their payment history, a copy of the note, the name of the entity that "holds the loan," as well as any "assignments of mortgage or deed of trust required to demonstrate" the right to foreclose.[2]

A notice of default regarding the Schmidts' loan was recorded on January 14, 2015. The notice of default stated that the Schmidts had to pay "$84,072.15 as of 1/12/2015" in order to "bring [their] account in good standing." A declaration attached to the recorded notice of default indicated that SPS had contacted the Schmidts, as required by Civil Code section 2923.55, subdivision (b)(2).

On April 28, 2015, a notice of trustee's sale was recorded against the property.

In February 2016, the Schmidts filed another loan modification application, which was not completed until May 2017. This loan modification application was denied on June 7, 2017.

---

[2] The letter indicated that the Schmidts could obtain copies of any assignments "[i]f we have commenced foreclosure or filed a Proof of Claim."

The record demonstrates that the Schmidts have not made any payments on the loan since October 2013. No trustee's sale has taken place, and the total amount owing on the loan stood at $2,298,570.55 as of June 19, 2017.

B. *Procedural background*

The Schmidts filed their initial complaint in July 2015, and have amended the complaint twice since that time. The current operative complaint is the second amended complaint. The second amended complaint sets forth causes of action for violation of the HBOR (Civ. Code, §§ 2923.55, 2923.6) and Business and Professions Code section 17200.[3] The Schmidts sought damages, restitution, and injunctive relief.

After answering the second amended complaint, the defendants filed a motion for summary judgment. The Schmidts opposed the motion. After full briefing and a hearing on the matter, the trial court granted the defendants' motion for summary judgment on August 4, 2017. The court entered judgment in favor of the defendants on August 23, 2017.

The Schmidts filed a timely notice of appeal from the notice of entry of judgment.

---

[3]      A violation of Civil Code section 2924.10 was also alleged, but was subsequently abandoned.

5

III.

DISCUSSION

A. *Additional background*

This appeal involves alleged violations of the HBOR. "The Homeowner Bill of Rights [citations] (HBOR), effective January 1, 2013, was enacted 'to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure.' ([Civ. Code, ]§ 2923.4, subd. (a).)" (*Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267, 1272, fn. omitted (*Valbuena*).)

The provisions comprising the HBOR have been relocated to different sections (and at times, returned to the original sections) of the Civil Code, and have been slightly amended since its passage. At the time of the recording of the notice of default in this case, the HBOR required a mortgage servicer to do a number of things before recording a notice of default or moving forward with a trustee's sale of a property.[4] For example, the HBOR prohibited a mortgage servicer from recording a notice of default before sending the borrower a letter explaining its right to request various loan documents. (See former

---

4     Many sections of the HBOR were subject to a sunset provision, effective on January 1, 2018. (*Lucioni v. Bank of America, N.A.* (2016) 3 Cal.App.5th 150, 157.) Former Civil Code sections 2923.55 and 2923.6 are two of the sections subject to the sunset provision. (Former § 2923.55, subd. (i); former § 2923.6, subd. (k).) All references to former sections 2923.55 and 2924.6 are to the version of these statutes in effect between January 1, 2013 and December 31, 2017.

Civ. Code,[5] § 2923.55, subds. (a)–(b).)  "[The] HBOR provides for injunctive relief for statutory violations that occur prior to foreclosure [citation], and monetary damages when the borrower seeks relief for violations after the foreclosure sale has occurred [citation]."  (*Valbuena*, *supra*, 237 Cal.App.4th at p. 1272.)  Section 2924.12, subdivision (c), provides a safe harbor by encouraging the curing of violations:  "A mortgage servicer . . . shall not be liable for any violation that it has corrected and remedied prior to the recordation of the trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of the trustee's deed upon sale."

Relevant to this appeal, former section 2923.55 provided, in relevant part:  "(a) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until all of the following: [¶] . . . [¶] (2) Either 30 days after initial contact is made as required by paragraph (2) of subdivision (b) or 30 days after satisfying the due diligence requirements as described in subdivision (f). [¶] . . . [¶] [(b) ](2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.  During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days.  The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose.  In either

---

[5]     Further statutory references are to the Civil Code unless otherwise indicated.

case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD–certified housing counseling agency. Any meeting may occur telephonically."

Also relevant to this appeal is former section 2923.6, which sought to encourage loan modifications as an alternative to foreclosures. For example, former section 2923.6, subdivision (c) provided:

> "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs: [¶] (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired. [¶] (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer. [¶] (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification."

Former section 2923.6 also required mortgage servicers, mortgagees, trustees, beneficiaries, or agents to provide borrowers with 30 days to appeal the denial of a loan modification, as well as additional time after the denial of an appeal. (See former § 2923.6, subds. (d), (e).) The statute further required that borrowers be provided "written notice to the borrower identifying the reasons for [the modification] denial, including" the amount of time a borrower had to request an appeal, "instructions

8

regarding how to appeal the denial," as well as information regarding the basis of the denial and possible other foreclosure alternatives. (*Id.*, subd. (f).)

B. *Statutory repeal*

As an initial matter, the defendants contend that the Schmidts' appeal is rendered moot as a result of "the repeal of Civil Code §§ 2923.55 and (in substantial part) 2923.6." The principle on which the defendants rely is known as the statutory repeal doctrine. (See *Thurman v. Bayshore Transit Management, Inc*. (2012) 203 Cal.App.4th 1112, 1151.) "Under [the statutory repeal] doctrine, . . . ' "where a right or a right of action depending solely on statute is altered or repealed by the Legislature, in the absence of contrary intent, e.g., a savings clause, the new statute is applied even where the matter was pending prior to the enactment of the new statute." ' [Citation.]" (*Ibid.*)

Although it is true that the Legislature repealed former section 2923.55, and some of section 2923.6, and in doing so did not include a savings clause, the defendants fail to acknowledge that the Legislature essentially re-enacted all but a small portion of section 2923.55 when it enacted many of the same provisions in section 2923.5, effective January 1, 2018.[6] Similarly, some of the provisions of former section 2923.6 were re-enacted or

---

6      The only provisions from former section 2923.55 that were not re-enacted in section 2923.5 are those provisions in subdivision (b), which required mortgage servicers to send a letter, in writing, to the borrower that includes information regarding the Servicemembers Civil Relief Act (50 U.S.C. Appen. § 501 et seq.), as well as information alerting the borrower to the fact that the borrower may request copies of certain documents, including the borrower's payment history, the promissory note, the deed of trust or mortgage, as well any assignment that would be required to demonstrate the right to foreclose. (Compare former section 2923.55 with section 2923.5.) Although the Schmidts attempt to rely on purported failures in meeting the obligations of subdivision

9

were replaced by similar but slightly different provisions in section 2924.11, effective January 1, 2018. In addition, section 2924.12, which authorizes a cause of action for HBOR violations and sets forth the remedies available for such violations, was amended in minor ways, but was not repealed. (Compare former § 2924.12 (eff. Jan. 1, 2015) with current § 2924.12 (eff. Jan. 1, 2018).)

We therefore reject defendants' contention that the Schimdts' appeal is moot in its entirety, pursuant to the statutory repeal doctrine. However, we also conclude that we need not delve into the intricacies of the defendants' statutory repeal argument because the judgment must be affirmed on other grounds.

C. *Evidentiary issues*

Another preliminary matter involves the Schmidts' challenge to the trial court's overruling of their objections to a significant portion of the evidence offered by the defendants in support of the motion for summary judgment. Because it is possible that

---

(b) of former section 2923.55 in asserting that summary judgment should not have been granted, the Schmidts cannot rely on this theory because the allegations of the complaint do not include any claim that the defendants failed to meet the written notice requirements of former section 2923.55, subdivision (b), nor do they include factual allegations that could support such a claim. (see *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250 (*Conroy*) [the pleadings set the boundaries of the issues to be resolved].) Courts must decline to consider a theory raised by a plaintiff in opposition to summary judgment if the argument is not supported by the pleadings: "The materiality of a disputed fact is measured by the pleadings." (*Ibid.*) A moving defendant "need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers." (*Government Employees Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 95, 98, fn. 4.) Given that there is no indication in the operative complaint that the Schmidts were relying on a purported violation of former section 2923.55, subdivision (b), the Schmidts cannot now attempt to assert that a violation of this provision establishes that the trial court erred in granting summary judgment.

10

reversal of an evidentiary ruling could affect the outcome of a motion for summary judgment, we first consider the evidentiary issue that the Schmidts raise.

The Schmidts argue that they objected to "much of th[e] declaration" of Rebecca Adelman, an SPS employee. They assert that the trial court "refused to rule on most of these objections," and further assert that the evidence provided by Adelman's declaration was "not admissible to prove Respondents' arguments."

"In determining whether a triable issue was raised or dispelled, we must disregard any evidence to which a sound objection was made in the trial court, but must consider any evidence to which no objection, or an unsound objection, was made. [Citations.]" (*McCaskey v. California State Automobile Assn*. (2010) 189 Cal.App.4th 947, 957.)

" ' "Pursuant to the weight of authority, appellate courts review a trial court's rulings on evidentiary objections in summary judgment proceedings for abuse of discretion. [Citations.]" [Citation.] The party challenging a trial court's evidentiary ruling has the "burden to establish such an abuse, which we will find only if the trial court's order exceeds the bounds of reason. [Citation.]" ' " (*Butte Fire Cases* (2018) 24 Cal.App.5th 1150, 1169; but see *Reid v. Google, Inc*. (2010) 50 Cal.4th 512, 535 ["[W]e need not decide generally whether a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or reviewed de novo"].) We will follow the weight of authority and apply the abuse of discretion standard. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2017) ¶ 8.168, p. 8-148.)

11

Contrary to the Schmidts' contention on appeal, the trial court did not decline to rule on their objections to the Adelman declaration. Rather, the trial court overruled all of their objections on the ground that the Schmidts' objections failed to comply with California Rules of Court, rule 3.1354(b)(3), which requires that a litigant "[q]uote or set forth the objectionable statement or material" objected to. The Schmidts do not even attempt to address the basis for the court's ruling with respect to their objections to the Adelman declaration, and our review of the record supports the trial court's conclusion that the Schmidts' objections fail to meet the requirements of the California Rules of Court for the format of evidentiary objections. The trial court acted well within its discretion in overruling the objections for failing to meet these standards. We therefore reject the Schmidts' contention that the trial court erred in admitting and considering the Adelman declaration.

D. *Defendants are entitled to summary judgment*

    1. *Summary judgment legal standards*

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that [it] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850, fn. omitted (*Aguilar*); accord, Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must make a prima facie showing either that the plaintiff cannot establish one or more elements of a cause of action or that there is a complete defense to the action. (*Aguilar*, at p. 850; § 437c, subds. (o), (p)(2).) A defendant moving for summary judgment may satisfy this initial burden of production by presenting evidence that

12

conclusively negates an element of the plaintiff's cause of action or by relying on plaintiff's factually devoid discovery responses to show that plaintiff does not possess, and cannot reasonably obtain, evidence to establish that element. (*Aguilar*, at pp. 854–855.) The opposing party has no obligation to show a triable issue of material fact exists unless and until the moving party has met its burden. (*Villa v. McFerren* (1995) 35 Cal.App.4th 733, 743–744.) If the defendant makes such a showing, the burden shifts to the plaintiff to present evidence showing there is a triable issue of material fact. (*Aguilar*, at p. 850.)

On review of an order granting summary judgment, an appellate court "independently examine[s] the record in order to determine whether triable issues of fact exist to reinstate the action." (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.) "We will affirm an order granting summary judgment . . . if it is correct on any ground that the parties had an adequate opportunity to address in the trial court . . . ." (*Securitas Security Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 120.)

2. *Appellants have not shown that any remaining material questions of fact exist with respect to the HBOR violations asserted in the SAC*

a. *Alleged violations of former section 2923.55*

The Schmidts allege in the SAC that the defendants are "obligated to comply with Civil Code section 2923.55 with regard to the Subject Property and Subject Loan," and that, "[d]espite the statements in the notice of default referenced herein to the effect that attempts to contact Plaintiffs w[ere] made, in fact, Defendants, and each of them, *never*

13

*made any attempt to contact Plaintiffs to discuss their financial situation and options to avoid foreclosure and did not do so within 30 days prior to the recording of the notices of default.*" (Italics added.) The SAC makes no other allegations with respect to the defendants' purported violations of former section 2923.55.

On appeal, the Schmidts contend that there remain factual issues in dispute as to whether the defendants complied with the requirements of former section 2923.55 prior to the recording of the notice of default in January 2015. Relying on *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 215 (*Mabry*), they assert that whether a defendant has complied with the requirements of section 2923.55 is a "classic question of fact that must be resolved by the trier of fact."

Again, during the relevant time period, former section 2923.55 required that, at least 30 days prior to recording a notice of default, a "mortgage servicer . . . contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." (Former § 2923.55(b)(2).) It further provided: "During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically." (*Ibid.*) In order to

14

ensure compliance with the statutory requirements, borrowers may bring actions for injunctive relief "to enjoin a material violation" of certain provisions of the HBOR, including a material violation of former section 2923.55, before a trustees deed upon sale has been recorded.  (See former § 2924.12, subd. (a)(1); see also current § 2924.12, subd. (a)(1) [providing for cause of action for injunctive relief for "material violation[s]" of current section 2923.5].)

"The right conferred by section 2923.5 [the predecessor to former section 2923.55] is a right to be contacted to 'assess' and 'explore' alternatives to foreclosure *prior* to a notice of default." (*Mabry*, *supra*, 185 Cal.App.4th at p. 225.)  However, even the terms "assess" and "explore" are to be "narrowly construed in order to avoid crossing the line from state foreclosure law into federally preempted loan servicing." (*Id.* at p. 232.) "Exploration must necessarily be limited to merely telling the borrower the traditional ways that foreclosure can be avoided (e.g., deeds 'in lieu,' workouts, or short sales), as distinct from requiring the lender to engage in a process that would be functionally indistinguishable from taking a loan application in the first place." (*Ibid.*)

The Adelman declaration provides more than enough evidence to demonstrate that the defendants satisfied the requirements of former section 2923.55 prior to the recording of the notice of default.  Adelman attests that the records kept by SPS reflect that SPS initiated telephone calls with the Schmidts on at least 11 occasions between March 2014 and late November 2014.  In addition, David Schmidt or his "Authorized Third Party" called SPS and spoke with an SPS employee another eight times.  SPS also attempted to contact the Schmidts, without success, an additional 35 times between November 2014

15

and January 14, 2015, which was the date the notice of default was recorded. The notes from the telephone discussions demonstrate that SPS employees discussed the Schmidts' financial situation with them, provided a loss mitigation review, discussed the Schmidts' loan modification application, discussed payment options, and offered the Schmidts a "[l]oss [m]it [m]eeting" on multiple occasions. In addition, the notes indicate that SPS employees provided the Schmidts with the HUD referral line telephone number. At some point, the Schmidts' agent and SPS employees discussed the potential sale of the home. Thus, SLS's records and the Adelman declaration demonstrate that SLS was in contact with the Schmidts and, as required by former section 2923.55, engaged in discussions "to assess the [Schmidt's] financial situation," "explore[d] options for the [Schmidts] to avoid foreclosure," offered the Schmidts additional subsequent meetings for the purpose of further discussions (and, in fact, engaged in multiple discussions about the Schmidts' financial situation and alternatives to foreclosure), and provided the Schmidts with the HUD toll-free telephone number. This evidence clearly establishes a prima facie showing that all of the contact and notice requirements of former section 2923.55 were met in this situation.

We further conclude that SPS complied with the requirements of former section 2923.55, subdivision (b)(2) by fully reviewing and processing the Schmidts' loan modification application before recording the notice of default. (See, e.g., *Hutchful v. Wells Fargo Bank, N.A.* (9th Cir. 2012) 471 Fed.Appx. 693, 694 [trial court had "properly construed the notice requirement of California Civil Code § 2923.5 as having been met by [the borrower's] extensive discussions with [the lender] regarding loan modification"];

16

*Bell v. Wells Fargo Bank, N.A.* (C.D.Cal., Oct. 28, 2014, No. CV 14-4316-JFW) 2014 WL 12611283, at *3 [loan modification review satisfies the requirement that the lender assess the borrower's financial situation and explore alternatives to foreclosure]; *Keng Hee Paik v. Wells Fargo Bank, N.A.* (N.D.Cal., Aug. 3, 2011, No. C 10-04016 WHA) 2011 WL 3359697, at *3 [lender's review of two loan modification applications demonstrated "conclusive[ ] compli[ance]" with former section 2923.5, predecessor statute to former section 2923.55].)

Because the defendants produced admissible evidence to support their prima facie showing that the contact and notice requirements of former section 2923.55 were met, the burden shifted to the Schmidts to offer contrary evidence giving rise to one or more triable issues of fact. (*Law Offices of Dixon R. Howell* (2005) 129 Cal.App.4th 1076, 1092.) The Schmidts offered the declaration of Mr. Schmidt. However, with respect to these contacts, Mr. Schmidt stated only that he "cannot recall any such calls taking place before January 2015, when a notice of default was recorded regarding [the] loan," that "to [his] recollection, [he] was never offered a meeting to discuss my situation o[r] alternatives to foreclosure," and that he did not recall that he "ever reject[ed] such an offer." A failure to recall does not logically contradict the evidence put forth by the defendants and is insufficient to demonstrate the existence of a triable issue of fact as to whether these contacts were, in fact, made. (See *Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 160 [statements that party was "not sure if the signature was or was not hers" and that she "could not recall signing such a contract" were "insufficient to create a triable issue of fact because a failure to recall does not logically contradict [the

17

moving party's] evidence"].)  The Schmidts' failure to raise a triable issue of fact by unequivocally denying all of these contacts, as well as the failure to deny the occurrence of multiple discussions regarding the loan modification application or receiving notice of the denial of the loan modification application, left the defendants' prima facie showing unrebutted and entitled the defendants to summary judgment.

The Schmidts nevertheless contend that material facts remain in dispute because the "alleged contacts" between SPS and the Schmidts "do not constitute compliance with Civil Code section 2923.55 because they were initiated by Mr. Schmidt, not the lender or its agent."  (Some formatting omitted.)  We disagree with the Schmidt's assertion that "contacts" between the lender or its agent and the borrow must be initiated by the lender or its agent in order to comply with former section 2923.55, and that any telephone calls initiated by the Schmidts, and not by SPS, in which the Schmidts' financial situation and alternatives to foreclosure were discussed, cannot constitute compliance with former section 2923.55.  The language of the statute does not require that a lender *initiate* the contact; rather, the statute requires only that the lender make contact in some manner and provide the borrower with an opportunity to discuss the borrower's financial situation and possible options for avoiding foreclosure.  (See former § 2923.55, subd. (b)(2).)  Indeed, multiple federal courts have concluded that former section 2923.55, subdivision (b)(2) does not require that the lender initiate the contact contemplated by the statute.  (See *Johnson v. SunTrust Mortg., Inc.* (C.D.Cal., Aug. 4, 2014, No. CV-14-2658 DSF) 2014 WL 3845205, at *1, *4 [where record demonstrated that the plaintiffs had initiated contacts with lender and conceded that during telephone calls "they had discussions with

18

[the lender] SunTrust regarding their financial situation and loan modification options," the plaintiffs' alleged former section 2923.55(b)(2) failed]; see also *Maomanivong v. National City Mortgage Co.* (N.D.Cal., Sept. 15, 2014, No. C-13-05433 DMR) 2014 WL 4623873 at *9, fn. 9 [holding that the lender or its agents need not be the party to initiate telephone contact in order to satisfy requirements of former section 2923.55, subdivision (b)(2)]; *Burton v. NDEx West, LLC* (Cal. Ct.App., Apr. 16, 2012, No. B232119) 2012 WL 1267884 at *4 ["The purpose of the contact requirement is fully satisfied if the contact occurs regardless of who initiated the contact. If the borrower initiates a call in which the parties discuss the borrower's financial condition and explore options for the borrower to avoid foreclosure, we can see no good reason to construe section 2923.5, subdivision (a)(2) as requiring the mortgagee, beneficiary or authorized agent to initiate another call for the same purpose"].)

We agree with these federal courts, and with SPS, who argues that we would be elevating form over substance if we were to conclude that only those contacts between a lender or its agent and a borrower that are *initiated by the lender* may satisfy the requirements of former section 2923.55, subdivision (b)(2). The content of the discussions had between SPS and the Schmidts satisfy the requirements set forth in former section 2923.55, subdivision (b)(2), regardless of which party initiated the telephone calls during which the discussions were had.

In addition, even if we were to accept the Schmidt's suggestion that we should interpret the word "contact" in former section 2923.55, subdivision (b)(2) to require that the lender *initiate* the contact, the evidence in this case suggests that SLS *did* initiate a

19

number of telephone calls with the Schmidts and discussed with them the matters required by former section 2923.55, subdivision (b)(2). For example, on dates in March, April and May 2014, SPS initiated contact with the Schmidts and discussed the Schmidts' financial situation, loan modification application, and payment options, and informed the Schmidts of their right to request a loss mitigation meeting within 14 days of each of these telephone calls. During one of these calls, in May 2014, SPS also provided the Schmidts with the HUD counseling referral telephone number. In August, September, and October 2014, after the Schmidts had been advised that their loan modification had been denied, SPS contacted them on multiple dates and discussed other potential options to avoid foreclosure, including a short sale or a payment plan. These calls were all initiated by SPS.[7]

### b. *Alleged violations of section 2923.6*

The Schmidts contend that the trial court erred in granting summary judgment with respect to their claim that the defendants violated former section 2923.6. Former

---

[7] Further, even if none of the telephone calls between SPS and the Schmidts had been initiated by SPS, and even if the statute did require that the lender initiate the contact, we are not convinced that the Schmidts would be entitled to injunctive relief on the ground that SPS had not initiated contact with them to discuss the matters required by former section 2923.55, subdivision (b)(2). Again, violations of the statute's provisions must be "material" in order to support a cause of action for an injunction. We conclude that if the purpose of the statute is met—if the borrower has had an opportunity to have at least two substantive discussions with the lender regarding the borrower's financial situation and possible options for avoiding foreclosure—then the fact that one or both of these discussions may have arisen as a result of the *borrower* initiating the telephone call with the lender or its agent cannot be considered to constitute a "material" violation of the statute.

20

section 2923.6 implemented the Legislature's intent to encourage loan modifications or workout plans when such modifications or plans would be beneficial to all investors in a loan pool. (See former § 2923.6, subd. (a).) The provision prohibited the recording of a notice of default or notice of sale (or the conducting of a trustee's sale) during the pendency of a first lien loan modification application, and set forth a number of requirements that had to be met before a notice of default or notice of sale could be recorded. (See former § 2923.6, subds. (c)–(f).)

On appeal, the Schmidts concede that "both [of their] applications for modification were denied and written notice was sent," in compliance with section 2923.6. However, they assert that material issues of fact remain with respect to whether the notices sent complied with the requirements of section 2923.6. Specifically, the Schmidts assert that the notices "failed to explain to the Schmidts how to file an appeal," and instead "only indicate [that] they had a right to appeal and the time [in which] to do so."

The Schmidts' argue that material issues of fact remain with respect to whether the written notices complied with the requirement of former section 2923.6 that the written notice of denial include "instructions regarding how to appeal the denial" (former § 2923.6, subd. (f)(1)). This argument fails, however, because the Schmidts do not allege in the operative complaint that this type of violation occurred. Rather, the Schmidts allege in the SAC that "[a]s of the date of the notice of default and notice of sale of the Subject Property as alleged herein, *there had not yet been any written determination that the Plaintiffs were not eligible for a first lien loan modification, nor had any appeal period had yet expire* [sic], Plaintiffs did not refuse to accept an offered first lien loan

21

modification within 14 days of the offer, Plaintiffs did not accept a written first lien loan modification, on which they had defaulted or breached, plaintiffs were not been given [*sic*] at least 30 days from the date of a written denial of the  modification to appeal the denial and to provide evidence that the determination was in error and the sale was noticed less than 31 days after written notice of denial, *particularly in that no notice of denial of the modification was ever given.*"[8]  (Italics added.)  There is no allegation that the defendants failed to comply with former section 2923.6, subdivision (f)(1)'s requirements by failing to provide "instructions regarding how to appeal the denial" of the loan modification.  Rather, the allegations related to a violation of former section 2923.6 involve assertions that the Schmidts' loan modification application remained pending and had not yet been denied at the time the notice of default and notice of sale were recorded.

Again, we may not consider a new theory raised by a plaintiff in opposition to summary judgment, or on appeal from the granting of summary judgment, where that theory is not supported by the pleadings.  (See *Conroy*, *supra*, 45 Cal.4th at p. 1250 [the pleadings set the boundaries of the issues to be resolved].)  Given that the Schmidts did not include an allegation in the SAC that the defendants failed to provide the Schmidts with sufficient instructions regarding how to appeal the denial of their loan modification application, the Schmidts may not now rely on this theory to escape summary judgment.

---

[8]     Again, the Schmidts now concede that written denial of their loan modification applications was, in fact, provided.

3. *No remaining material questions of fact have been demonstrated with respect to the Business and Professions Code section 17200 violations asserted in the SAC*

The Schmidts acknowledge that their claims for violations of section 17200 are predicated on the alleged violations of the HBOR that they assert in the SAC. Because we have concluded that the defendants are entitled to summary adjudication of the Schmidts' claims for violations of HBOR, it follows that the defendants are also entitled to summary adjudication of the section 17200 claims that are premised on the HBOR violations.

IV.

DISPOSITION

The judgment of the trial court is affirmed. The defendants are entitled to their costs on appeal.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

23