Filed 11/17/25  Higgins v. Environmental Design Studio CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| KIMBERLY K. HIGGINS,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>ENVIRONMENTAL DESIGN STUDIO,<br><br>Defendant and Respondent. | B341317<br><br>(Los Angeles County Super. Ct. No. 20STCV18156) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ian C. Fusselman, Judge.  Affirmed.

McNicholas & McNicholas and John P. McNicholas for Plaintiff and Appellant.

Quintairos, Prieto, Wood & Boyer and Justin A. Bubion for Defendant and Respondent.

————————————

Kimberly K. Higgins appeals from the judgment entered after the trial court granted the summary judgment motion filed by Environmental Design Studio in this personal injury case. Higgins sued Environmental Design, a landscaping service contracted by her employer (Restoration Hardware), for negligence in connection with injuries she sustained after a ladder fell on her in a storage room at her workplace. The trial court (a different judge) previously granted a summary judgment motion filed by Environmental Design, but we reversed on the basis that Environmental Design did not meet its initial burden to present evidence that Higgins could not establish one or more elements of the action. (*Higgins v. Envtl. Design Studio* (July 17, 2023, No. B322269) [nonpub. opn.].) We explained with respect to the declaration Environmental Design submitted from its president, that he "did not explain how he knew any of the facts asserted in the declaration. He did not state, for example, that he was ever on site at Restoration Hardware, that he personally performed the gardening services at issue or directly supervised others who did, or that he otherwise had reason to believe the facts were true."

In its second summary judgment motion, Environmental Design submitted a new declaration from the maintenance supervisor who oversaw Environmental Design's work at the Restoration Hardware store. In granting summary judgment, the trial court found Environmental Design met its initial burden on summary judgment and Higgins did not create a triable issue of fact because the evidence Higgins presented—that an Environmental Design employee used the same ladder on Restoration Hardware's rooftop garden two months earlier—did

not support a reasonable inference that an Environmental Design employee negligently placed the ladder in the storage room.

Higgins contends the trial court erred in overruling her objections to the declaration of the maintenance supervisor and she presented circumstantial evidence an Environmental Design employee placed the ladder in the storage room. This time, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Complaint*

On May 12, 2020 Higgins filed this action against "Doe Gardeners" and individual unnamed gardener defendants, asserting a single cause of action for negligence. Higgins alleged that on June 17, 2018, while she was performing her customary duties as an associate designer at a Restoration Hardware store in West Hollywood (the Store), a 12-foot ladder fell on her, striking her head and causing her to suffer traumatic brain damage and other injuries (the incident). Higgins alleged the ladder was "last used by [defendant gardeners] in the maintenance of the garden." On September 1, 2020 Higgins amended the complaint to name Environmental Design as a defendant.[1]

---

[1] On August 21, 2020 Higgins named Environmental Landscape Development, Inc. as a defendant. Environmental Landscape Development was dismissed from the action with prejudice on April 4, 2023, and it is not a party to this appeal.

B.      *Environmental Design's Motion for Summary Judgment*
     1.      *Motion and supporting evidence*

On June 6, 2024 Environmental Design filed its motion for summary judgment. It argued that Higgins could not establish the duty, breach, and causation elements of a negligence cause of action because the undisputed evidence established that Environmental Design employees did not have access to the storage room where the ladder fell, and there was no evidence its employees entered or placed the ladder in the storage room. In support of its motion, Environmental Design submitted excerpts from Higgins's deposition and her responses to requests for admission and interrogatories, as well as declarations from Environmental Design's corporate president, Sean Femrite, and its maintenance supervisor, David Garaffo.

In her deposition, Higgins testified that one morning in April 2018, about two months before the incident, she saw an Environmental Design employee[2] using a 12-foot aluminum ladder in the Store's rooftop garden. The ladder "appeared to be" Restoration Hardware's ladder. Higgins was "pretty much one hundred percent sure" the ladder used on the rooftop in April was owned by Restoration Hardware and was the same ladder that fell on her two months later because the Environmental Design employee left the ladder on the rooftop after he left the premises, and the ladder was still there at 9:00 a.m. later that morning.

According to Higgins's deposition testimony, the storage room where the incident occurred was located on the first floor of the Store and contained rugs, textile swatches on shelves, and

---

[2]     Higgins stated she recognized the Environmental Design employees because they wore olive uniforms with safari hats.

4

electronic equipment. Higgins never saw any plants in the room. Entry to the storage room was controlled by a keypad lock. All Restoration Hardware employees had the access code to enter the room, but Higgins did not know if the code was given to vendors, and she did not know if Environmental Design employees had access to the room at any time before the incident. She had never seen anyone from Environmental Design in the storage room, nor was she aware of any previous occasion when an Environmental Design employee was inside the room. Higgins only saw Environmental Design employees doing landscape maintenance in the rooftop garden, and never inside the Store. She did not recall ever seeing an Environmental Design employee carry a ladder up or down the stairs or in the elevator. Higgins admitted she did not know who placed the ladder in the storage room before the incident.

In response to requests for admission and interrogatories, Higgins admitted Environmental Design did not own the ladder involved in the incident and did not own, possess, or control the Store premises, including the storage room. In response to an interrogatory asking Higgins to state all facts that supported her cause of action for negligence, Higgins responded: "Based upon the facts that are presently known, the ladder in question which [Environmental Design] employees used on a regular basis to service the roof garden was replaced in such a manner that it fell and struck [Higgins]." In response to an interrogatory seeking all facts supporting her contention that Environmental Design controlled the premises (defined as where the incident occurred) at the time of the incident, Higgins responded that Environmental Design "did not necessarily control the premises per se, but rather, the ladder in question."

In his declaration, Environmental Design president Femrite averred he had personal knowledge of the landscaping services provided by Environmental Design at the Store.[3] Restoration Hardware contracted with Environmental Design in 2015 to provide landscape maintenance services. Environmental Design's policy and procedure was to bring its own ladders to the site; not to store any equipment or ladders in the storage room or elsewhere at the Store; and not to use any ladders that might be available at the Store. Femrite had visited the Store on multiple occasions and observed the storage room door had a password-protected keypad that restricted access to the room; Environmental Design did not have the password or keys to enter the storage room.

In his declaration, Environmental Design maintenance supervisor Garaffo averred that from 2017 to the date of his declaration (May 2024) he was the exclusive maintenance supervisor for landscaping services at the Store. As such, he was "personally involved with," "personally present," and had "personally overseen" all services provided by Environmental Design at the Store. Environmental Design provided landscape maintenance services between 7:00 a.m. and 10:00 a.m. on weekdays. It did not perform services on weekends.[4]

---

[3] We summarize only those portions of the Femrite declaration with respect to which the trial court did not sustain an evidentiary objection.

[4] We take judicial notice that June 17, 2018, the date of the incident, was a Sunday. (Evid. Code § 452, subd. (h) [courts may take judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and

6

In paragraphs 5 and 7 Garaffo made statements about the work of Environmental Design employees at the Store based on his "personal knowledge and personal observations on behalf of [him]self and the [Environmental Design] employees that worked with [him] at the Store." Garaffo stated in paragraph 5 that at all times in the 90 days preceding the incident, Environmental Design employees brought their own ladders to the Store; they kept their ladders in their trucks; they did not store any ladders at the Store, including in the storage room; they did not use any ladders provided by Restoration Hardware or located at the Store; and they only used six-foot ladders. In paragraph 7, Garaffo stated Environmental Design employees did not have the password for the storage room or otherwise have access to the storage room; they did not provide any services in the storage room; and they did not place or store any equipment, including ladders, in the storage room.

In paragraphs 8 through 11, Garaffo stated Environmental Design employees did not know when, how, by whom, and in what manner the 12-foot ladder that struck Higgins came to be placed in the storage room at the time of the incident. In each of these four paragraphs, Garaffo stated, "I confirmed this information by speaking to [Femrite] and the employees that worked with me during the [90-day] period before the [i]ncident."

Higgins objected to paragraphs 5 and 7 of Garaffo's declaration on the grounds that his testimony lacked foundation based on personal knowledge and was based on hearsay. In ruling on the summary judgment motion, the trial court

---

accurate determination by resort to sources of reasonably indisputable accuracy"].)

7

overruled Higgins's objection to paragraph 5, explaining that Garaffo "establishe[d] the foundation for his personal knowledge." The court sustained Higgins's objection to paragraph 7 to the extent Garaffo relied "on hearsay statements by [Environmental Design] employees" but clarified "there is adequate foundation establishing his personal knowledge of these facts to the extent he avers he was present when work was being done."[5]

2.      *Higgins's opposition and additional evidence*

In opposition to the summary judgment motion, Higgins argued the fact she had seen Environmental Design employees using the ladder that injured her two months before the incident was sufficient circumstantial evidence to support a finding that Environmental Design was responsible for replacing the ladder in the storage room in a negligent manner before it fell on her. She explained, "[j]ust because [Environmental Design] claims that it does not know who or when or how the ladder found its way from the . . . roof garden in April 2018 back to the storage room in time for plaintiff's injury on June 17, 2018 is not dispositive of this motion. . . . It is a question of fact. . . . A reasonable and logical inference which could be drawn by a jury is that an [Environmental Design] employee returned the ladder to the storage room from which he removed it in the first place."

---

[5]      The trial court stated in its order that it was sustaining in part Higgins's objection to paragraph 9, but it appears the court was responding to Higgins's objection to the statements in paragraph 7, which was misidentified in Higgins's objection as paragraph 9. We address below Higgins's objections to paragraphs 5 and 7.

8

In a supporting declaration, Higgins averred she saw Environmental Design employees "use the [Restoration Hardware] ladder on the roof in April 2018." On June 17, 2018, as she was walking through the storage room, "a 12-foot ladder fell from where it had been stored on the wall in the storage room" and struck her head. During her seven years working at the Store, she "saw vendor's [sic] employees, including employees of [Environmental Design] come and go at [the Store]." During this period, she also saw that "[Restoration Hardware] left the door to the storage room ajar as an accommodation for [Environmental Design's] employees (and others) to have easy access to the storage room," and "[Environmental Design's] employees (and others) did not need a key or password to enter the storage room."[6]

Higgins also submitted the full transcripts of the depositions of Femrite and Garaffo. During his three-minute deposition, Femrite was asked why he was in the storage room during the 90 days before the incident. Femrite responded that he was not in the storage room. Garaffo was asked the same question during his four-minute deposition, and he responded, "I was never in the storage room or near it. I have no recollection or knowledge of that storage room." The only other questions Garaffo was asked related to his tenure and positions at Environmental Design and whether he knew two specific

---

[6] Environmental Design objected to Higgins's declaration on the basis that her statements were self-serving and directly contradicted her deposition testimony that she did not know whether Environmental Design had access to the storage room. The trial court overruled the objection. We do not reach Environmental Design's contention on appeal that this was error.

individuals (he did not).  In her opposition, Higgins argued Garaffo's admission that he was never in or near the storage room contradicted the statement in his declaration that he had personal knowledge that the storage room was locked with a keypad.[7]

C.      *The Trial Court's Ruling and Entry of Judgment*

Higgins's attorney argued at the August 30, 2024 hearing on the summary judgment motion, as he does on appeal, that Garaffo could not have had personal knowledge of the facts in his declaration because he admitted at his deposition that "he was never, ever at the premises."  The trial court observed in response that the fact Garaffo was not in the storage room did not mean he was not at the Store.  The court also rejected the argument by Higgins's attorney that Environmental Design could not meet its initial burden on summary judgment without presenting testimony of the Environmental Design employees who worked at the Store on the Friday before the incident.  The court noted that Higgins could have deposed those employees to meet its burden.

The trial court adopted its tentative ruling and granted Environmental Design's motion for summary judgment.  The court found that Environmental Design made a prima facie

---

[7]      In its reply, Environmental Design argued that Higgins's testimony that Environmental Design employees used the Restoration Hardware ladder two months before the incident did not support an inference Environmental Design negligently placed the ladder in the storage room preceding the incident. Environmental Design also argued the objections to the Femrite and Garaffo declarations lacked merit, and there was no inconsistency between their declarations and their admissions that they had never been inside the storage room.

showing there was no triable issue of fact as to the negligence elements of duty, breach, and causation:  "[Environmental Design] provide[d] evidence that it provided landscape services to the [S]tore but never owned, operated, possessed or controlled the storage room where the incident occurred and did not place or store any tools, equipment or ladders inside the storage room."

Regarding causation, the trial court  considered whether Higgins raised a triable issue that Environmental Design employees had placed the ladder in the storage room before it fell on Higgins.  The court found that Higgins's opposition relied on the fact she saw Environmental Design employees using the same ladder two months before the incident and that the storage room door was not always kept locked, but she did not adduce any evidence disputing Environmental Design's evidence that it did not control the storage room or place the ladder in the room. The court concluded, "At best, [Higgins's] evidence supports speculation as to whether [Environmental Design] negligently placed the ladder in the storage closet.  This speculation, while certainly within the realm of possibility, does not amount to a reasonable inference.  As such, it also fails to raise a triable issue of fact."

On September 24, 2024 the trial court entered judgment in favor of Environmental Design.  Higgins timely appealed.

## DISCUSSION

A.    *Standard of Review*

Summary judgment is appropriate only if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c);

11

*Regents of University of California v. Superior Court* (2018)
4 Cal.5th 607, 618; *Gordon v. Continental Casualty Co.* (2024)
107 Cal.App.5th 89, 99.) "'"'"We review the trial court's decision
de novo, considering all the evidence set forth in the moving and
opposing papers except that to which objections were made and
sustained."' [Citation.] We liberally construe the evidence in
support of the party opposing summary judgment and resolve
doubts concerning the evidence in favor of that party."'"
(*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347;
accord, *Gordon*, at p. 99; *Camden Systems, LLC v. 409 North
Camden, LLC* (2024) 103 Cal.App.5th 1068, 1077-1078.)

A defendant moving for summary judgment has the initial
burden of presenting evidence that a cause of action lacks merit
because the plaintiff cannot establish an element of the cause of
action or there is a complete defense. (Code Civ. Proc., § 437c,
subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001)
25 Cal.4th 826, 853; accord, *Gordon v. Continental Casualty Co.,
supra*, 107 Cal.App.5th at p. 99.) The defendant "may satisfy this
initial burden of production by presenting evidence that
conclusively negates an element of the plaintiff's cause of action
or by relying on plaintiff's factually devoid discovery responses to
show that the plaintiff does not possess, and cannot reasonably
obtain, evidence to establish that element." (*Schmidt v. Citi-
bank, N.A.* (2018) 28 Cal.App.5th 1109, 1119; accord *Aguilar*, at
pp. 854-855 & fn. 22.) If the defendant satisfies this initial
burden, the burden shifts to the plaintiff to present evidence
demonstrating there is a triable issue of material fact. (Code Civ.
Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850; *Gordon*, at pp. 99-
100.)

12

"""In performing an independent review of the granting of summary judgment, we conduct the same procedure employed by the trial court.""" (*Camden Systems, LLC v. 409 North Camden, LLC, supra*, 103 Cal.App.5th at p. 1078.) "First, we identify the causes of action framed by the pleadings. Second, we determine whether the moving party has satisfied its burden of showing the causes of action have no merit because one or more elements cannot be established, or that there is a complete defense to that cause of action. Third, if the moving party has made a prima facie showing that it is entitled to judgment as a matter of law, the burden of production shifts and we review whether the party opposing summary judgment has provided evidence of a triable issue of material fact as to the cause of action or a defense." (*Berlanga v. University of San Francisco* (2024) 100 Cal.App.5th 75, 81; accord, *Camden*, at p. 1078.) "'A party opposing summary judgment may not "rely upon the allegations or denials of its pleadings" but must set forth "specific facts" beyond the pleadings to show the existence of a triable issue of material fact.'" (*Berlanga*, at pp. 81-82.) Nor can a party """""avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact.""""" (*Restivo v. City of Petaluma* (2025) 111 Cal.App.5th 267, 279; accord, *Menges v. Department of Transportation* (2020) 59 Cal.App.5th 13, 23.)

B.    *The Trial Court Did Not Err in Overruling Higgins's Objections to the Garaffo Declaration Other than as to His Statements About the Storage Room*

As a threshold matter, Higgins contends the trial court erred in failing to sustain all of her objections to the Garaffo

13

declaration, because Garaffo did not have personal knowledge of the facts he stated.[8] "'"Personal knowledge" means a present recollection of an impression derived from the exercise of the witness' own senses.'" (*People v. Valencia* (2021) 11 Cal.5th 818, 831, fn. 12; accord, *Chambers v. Crown Asset Management, LLC* (2021) 71 Cal.App.5th 583, 601.) "Unless a witness is testifying as an expert, 'the testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter.'" (*Chambers*, at p. 601, quoting Evid. Code, § 702, subd. (a).) "A witness'[s] personal knowledge of a matter may be shown by any otherwise admissible evidence, including his own testimony." (Evid. Code, § 702, subd. (b).)

Garaffo averred (without objection) that as Environmental Design's exclusive maintenance supervisor at the Store since 2017, he was "personally involved with" and "personally present and [had] personally overseen the services provided by [Environmental Design] employees at the Store." With respect to paragraphs 5 and 7, Garaffo also declared, "On all occasions when services were performed by [Environmental Design]

---

[8] The Supreme Court has not decided "whether a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or reviewed de novo." (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535; accord, *Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 226 [in *Reid* "the California Supreme Court expressly declined to reach the issue of the appropriate standard of review for reviewing a trial court's rulings on evidentiary objections made in connection with a summary judgment motion"].) Our conclusions with respect to the challenged portions of Garaffo's declaration are the same under either standard.

employees at the store during the [90-day] period prior to the incident . . ., I can confirm the following based on my personal knowledge and personal observations on behalf of myself and the [Environmental Design] employees that worked with me at the Store."

To the extent Garaffo's statements were based on observations by *other* Environmental Design employees, Higgins's objections are well taken. However, most of Garaffo's statements were based on his personal observations given that he was "personally present and observed the work being performed by [Environmental Design] employees" "[o]n all occasions" during the 90-day period preceding the incident. For example, with respect to paragraph 5, Garaffo had personal knowledge to make the following statements challenged by Higgins: Environmental Design employees did not use any ladders provided by Restoration Hardware; they brought their own ladders to the Store; they stored their ladders on Environmental Design trucks; they used only six-foot ladders to perform services at Restoration Hardware; and they did not need 12-foot ladders to perform work at Restoration Hardware. Because he was continually present and supervised the other employees at all times, Garaffo would have seen if one of his workers used a 12-foot Restoration Hardware ladder (visually distinguishable from Environmental Design's six-foot ladders) or carried a 12-foot ladder off the rooftop and down the stairs or into the elevator. His testimony that this never occurred was "'an impression derived from the exercise of [his] own senses.'" (*People v. Valencia, supra*, 11 Cal.5th at p. 831, fn. 12.)

Moreover, Higgins did not present any evidence contradicting Garaffo's foundational testimony that during the

15

90-day period preceding the incident he personally observed the Environmental Design employees. Higgins deposed Garaffo after Environmental Design filed for summary judgment, yet Higgins's attorney never asked Garaffo during his four-minute deposition whether there were lapses or limitations in Garaffo's ability to observe his coworkers.

Higgins also challenged Garaffo's statements in paragraph 7 that Environmental Design workers did not place or store any tools, equipment, or 12-foot ladders (or any ladders) inside the storage room; they did not have access to the storage room; they did not have the password or keys to the storeroom, which was password protected; and because they never stored the 12-foot ladder that was involved in the incident, they could not have been the last ones to have placed the ladder in the storage room before the incident. We agree with Higgins that the trial court erred in overruling her objections to these statements because Garaffo acknowledged in his deposition that he was "never in the storage room or near it," and he had "no recollection or knowledge of that storage room."[9] Thus, he would not have had personal knowledge whether an Environmental Design employee had ever entered the storage room or stored a ladder or other equipment in the storage room.

Higgins also argues in her opening brief that all of Garaffo's challenged statements should have been excluded because "Garaffo testified by declaration . . . that he had been at the *premises* 90 days before [the incident]. He later testified in

---

[9] Garaffo similarly stated in paragraph 5(b) of his declaration that Environmental Design employees did not store any ladders in the storage room or Store. We agree the trial court should have sustained an objection to this statement.

16

his deposition that he had never been *there*." (Italics added.) Higgins's argument mischaracterizes the record, conflating the Store and the storage room. As discussed, Garaffo testified that he "was never in the storage room or near it." Consistent with this testimony, Garaffo declared he was present at the Store and rooftop during the 90-day period; he never asserted he was present near or in the storage room.

Higgins also argues the trial court should not have credited the Garaffo and Femrite declarations because Environmental Design did not submit declarations "from one or more of the workers who were actually at the site of [Higgins's] injury." Higgins asserts (without any citation to the record) that the Environmental Design workers were present "up to and including the Friday before the ladder fell on [Higgins] on Sunday, June [17], 2018." In support of her argument, Higgins relies on the CACI No. 203 pattern jury instruction, which states, "You may consider the ability of each party to provide evidence. If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence." CACI No. 203 is based on Evidence Code section 412, which provides, "If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust." (See CACI No. 203, Sources and Authority.) This argument lacks merit.

Higgins does not cite, nor are we not aware of, any authority that a court, in reviewing a grant of summary judgment, may disregard evidence presented by the moving party based on CACI No. 203—a jury trial instruction—or Evidence Code section 412. Moreover, CACI No. 203 "should not be given if

17

there is no evidence that the party producing inferior evidence had the power to produce superior evidence." (CACI No. 203, Directions for Use.) Likewise, Evidence Code section 412 does not apply "merely where a party has the ability or opportunity to create evidence. The evidence must itself already exist." (*Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 363 [trial court erred in in applying Evid. Code, § 412 to discredit plaintiff's testimony during bench trial that defendant polluted water based on plaintiff's failure to produce written water studies, where studies had not been conducted].)

There is no evidence Environmental Design could have produced evidence superior to the Garaffo declaration. As Garaffo averred, he personally provided landscaping services at the store and, as the exclusive management supervisor, he supervised the other employees and their work; there is no indication in the record that any other employee was more knowledgeable. There is also no evidence to support Higgins's assertion that Environmental Design workers were present on the Friday before the incident, and, if they were, that Garaffo was not. Nor did Higgins offer any evidence about other workers despite her opportunity to inquire of Femrite and Garaffo about other workers who were at the Store on the Friday before the date of the incident, and to depose those individuals.

Finally, to the extent Higgins contends the trial court erred in granting summary judgment because Environmental Design did not submit a declaration on behalf of *every* employee who worked at the store to prove the negative (that they did not place the Restoration Hardware ladder in the storage room before the incident), Higgins misapprehends Environmental Design's

18

burden on summary judgment: "[A]ll that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action . . . the defendant need not himself conclusively negate any such element." (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at pp. 853-854.)

C. *The Trial Court Did Not Err in Granting Environmental Design's Summary Judgment Motion*

"The four elements of a negligence claim are well established: (1) duty; (2) breach; (3) proximate causation; and (4) injury." (*The Law Firm of Fox & Fox v. Chase Bank, N.A.* (2023) 95 Cal.App.5th 182, 192; accord, *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213 ["To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.'"].) To recover in this action, Higgins had to prove Environmental Design employees negligently placed the ladder in the storage room, which caused it to fall on Higgins.[10] We agree with the trial court that Higgins failed to create a triable issue of fact.

We first consider the evidence in Environmental Design's moving papers. (Code Civ. Proc., § 437c, subd. (p)(2).) Garaffo averred that Environmental Design provided landscape maintenance services only on the roof of the Store, and in the 90 days preceding the incident, Environmental Design employees

---

[10]    As stated in her interrogatory responses and admissions, Higgins does not contend Environmental Design owned or controlled the storage room, and she did not pursue theories of premises liability or res ipsa loquitor.

19

used only their own six-foot ladders and never used Restoration Hardware's 12-foot ladders. Higgins admitted in her deposition she saw an Environmental Design employee using a Restoration Hardware ladder on only the single occasion in April 2018 when she saw the employee using the ladder on the roof, and the ladder was still on the roof after the Environmental Design employee left. Higgins also admitted she had only seen Environmental Design employees in the rooftop garden or traveling on the stairs; she never saw an Environmental Design employee in the storage room. Finally, Higgins admitted she did not know who placed the ladder in the storage room before the incident, and she did not know if Environmental Design had access to the storage room. With this evidence, Environmental Design met its initial burden to show that Higgins would not be able to prove that an Environmental Design employee placed the ladder in the storage room prior to the incident, negating the elements of breach and causation.

In her opposition, Higgins failed to present "'specific facts'" to rebut Environmental Design's showing and create a triable issue of material fact. (See *Berlanga v. University of San Francisco, supra*, 100 Cal.App.5th at pp. 81-82.) She averred in her declaration she saw an Environmental Design employee using the Restoration Hardware ladder on the roof in April 2018, and two months later, that ladder fell from the wall in the storage room. Although this controverts Garaffo's testimony that Environmental Design employees never used a Restoration Hardware ladder, it is not evidence that Environmental Design placed the ladder in the storage room before the incident. Higgins also averred that Restoration Hardware left the door to the storage room open "as an accommodation for [Environmental

20

Design] employees and others to have easy access to the storage room." But the fact that Environmental Design employees *could* have entered the storage room without a password is not evidence they actually entered the room, let alone that they did so in the days leading up to the incident.

Higgins argues she produced "circumstantial evidence" Environmental Design employees placed the ladder in the storage room. Circumstantial evidence is indirect evidence from which a logical and reasonable factual inference may be made. (CACI No. 202; see Evid. Code, § 600, subd. (b) ["An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action."].)[11]

We agree with the trial court that Higgins's proffered indirect evidence—Environmental Design's use of the Restoration Hardware ladder on the Store rooftop in April 2018 and Restoration Hardware's practice of leaving the storage room door ajar—was insufficient to support a logical and reasonable inference that Environmental Design employees placed the ladder in the storage room two months later. Further, several of Higgins's admissions undermine such an inference. For example, Higgins only once saw Environmental Design employees using

---

[11] Higgins argues that the reasonableness of an inference is a factual question that the jury should decide, citing *Regents of University of California v. Superior Court, supra*, 4 Cal.5th 607. However, the court in *Regents* considered only whether the university owed a duty of care to protect students from reasonably foreseeable violence (see *id*., at p. 634); it did not hold the "reasonableness" of an inference from circumstantial evidence cannot be decided on summary judgment.

the ladder (in April), and the employees did not remove the ladder from the roof when they left the Store; Higgins never saw Environmental Design employees inside the Store (other than on the stairs); Higgins never saw the Environmental Design employees in the storage room; the storage room was on the first floor and was used to store swatches, rugs, and computers (not gardening supplies); and Higgins did not know whether any Environmental Design employee ever had entered the storage room at any time before the incident. Higgins's proposition that an Environmental Design employee placed the ladder in the storage room is based on pure conjecture and speculation, not circumstantial evidence, and it does not create a triable issue of fact. (*Restivo v. City of Petaluma, supra*, 111 Cal.App.5th at p. 279; accord, *Advent, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA* (2016) 6 Cal.App.5th 443, 459 (*Advent*) ["'When opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork.'"].)

*Advent supra*, 6 Cal.App.5th 443, relied on by the trial court, is instructive. *Advent* involved a coverage dispute among insurers after a construction worker for a subcontractor, John Kielty, sued the general contractor for injuries he sustained in falling down an unguarded stairway shaft inside an unfinished building. (*Id.* at p. 446.) The insurer for the subcontractor moved for summary judgment on the coverage claim by the general contractor's insurer, arguing the subcontractor did not cause Kielty's injury. (*Id.* at p. 459.) It was undisputed that the subcontractor was working outside of the building in which Kielty fell; a foreman for the subcontractor directed Kielty to

22

retrieve plywood; the path to the plywood was entirely outside the building; and Kielty was seen going inside the building, where he fell down the stairway. (*Id.* at pp. 459-460.) Kielty did not remember how he fell, and there was no evidence of the circumstances of the fall. (*Ibid.*) In its opposition, the general contractor's insurer argued Kielty's injuries were "*potentially* caused by [the subcontractor]" because at all relevant times Kielty was acting on the subcontractor's behalf. (*Id.* at p. 459.) The Court of Appeal affirmed the order granting summary judgment, concluding the subcontractor's insurer met its initial burden, and the general contractor's insurer failed to create a triable issue of fact because there was no evidence the subcontractor's foreman directed or caused Kielty to enter the building. (*Id.* at p. 460.) The court concluded, "[the general contractor's insurer] seems to claim that based on the undisputed circumstances of Kielty's fall—the fact that he was at the jobsite and was directed by the [subcontractor's] foreman to retrieve plywood when he fell—it can be reasonably inferred that [the subcontractor] was at fault. We disagree with [the general contractor's insurer's] assessment, which relies purely on speculation, not reasonable inferences." (*Ibid.*)

The speculative leap in this case is even greater than in *Advent*. In *Advent*, the undisputed facts showed the foreman supervised Kielty and directed his actions on the day of the accident, although there was no evidence he directed Kielty into the building. Here, there is no evidence Environmental Design controlled the placement of Restoration Hardware's 12-foot ladder on the day of the incident, and accepting Higgins's facts as true, two months passed from the day an Environmental Design employee used the ladder on the roof and the day the ladder fell

23

from the storage room wall.  And like the *Advent* plaintiff, Higgins did not know the circumstances under which the ladder came to be inside the storage room, and she adduced no facts bridging the causal chasm between Environmental Design's use of the ladder on the roof and her injury.[12]

---

[12]    *Donchin v. Guerrero* (1995) 34 Cal.App.4th 1832, relied on by Higgins, is distinguishable.  In *Donchin*, we reversed the grant of summary judgment in favor of the landlord of a building in which a tenant owned two rottweilers who attacked the plaintiff where the plaintiff had alleged the landlord knew the dogs were dangerous.  (*Id.* at p. 1835.)  In his moving papers, the landlord declared he did not know the dogs were dangerous, although he admitted he had observed the dogs on multiple occasions (despite his earlier denial he knew the tenant had dogs).  (*Id.* at p. 1844.) We concluded the plaintiff created a triable issue of fact by submitting declarations from witnesses who attested the dogs frequently displayed extreme ferociousness when approached at the landlord's building, and an animal behaviorist who declared that rottweilers display "'territorial aggressive behavior towards strangers'" and opined it was likely the landlord witnessed such behavior in visiting the building and had actual knowledge of the dogs' dangerousness.  (*Ibid.*)  We explained the plaintiff's affirmative evidence supported a reasonable inference that the landlord must have known about the dogs' vicious nature, and the landlord's prior false denial of knowledge the dogs existed further cast doubt on the landlord's credibility in denying he knew the dogs had a vicious propensity.  (*Id.* at p. 1845.)  Higgins made no comparable showing.

24

## DISPOSITION

The judgment is affirmed.  Environmental Design is to recover its costs on appeal.


FEUER, J.

We concur:


SEGAL, Acting P. J.


STONE, J.